IN THE MATTER OF THE APPLICATION OF TO-
MASA RAGRAG SORIANO FOR A WRIT OF
HABEAS CORPUS.

No. 2427.

SUBMITTED OCTOBER 15, 1940.          DECIDED DECEMBER 11, 1940.

PETERS AND KEMP, JJ., AND CIRCUIT JUDGE BROOKS
IN PLACE OF COKE, C. J., ABSENT.

OPINION OF THE COURT BY PETERS, J.

*Habeas corpus.* Petitioner and respondent are the
mother and father, respectively, of five children born out
of wedlock. The mother, by these proceedings, seeks the
recovery from the father of the four oldest. The circuit
judge found that the petitioner was a person of unsound
and unstable character and unsound morals and hence

not a fit and proper mother to have the custody of the children subject to the proceedings. The writ was accordingly dismissed. Petitioner prosecuted error.

One of the assignments of error presents for review the legal sufficiency of the evidence to sustain these findings. Assuming the supporting evidence to be true and according to it all of the inferences to which it is entitled, we are of the opinion that this assignment of error must be sustained and the decree reversed.

Where children are born out of wedlock the law presumes that it is for the best interests of the children and of society that during their minority they remain in the custody of their mother and that they be maintained, cared for and educated by her under her supervision and direction. And where, as here, it does not appear that the mother has surrendered or abandoned such children or in any way waived or forfeited her right to their care and custody, this legal presumption, in the absence of evidence that she was or has become unfit to have their custody and control, is sufficient to entitle her on *habeas corpus* to the restoration of their custody.

The evidence upon which the trial judge found that the petitioner was a person of unsound and unstable character and unsound morals consisted solely of conduct of the same general character as her relations with respondent which rendered her children illegitimate. Immediately prior to the petitioner going to live with the respondent she was living with a man with whom she had emigrated from the Philippines. She testified that they had not been married but were merely "partners." The trial judge found that they had been married in the Philippines prior to their departure. Further, after petitioner and respondent had been living together for approximately fifteen years and the youngest of the five children was about four years old, she had an affair with a boarder in the

household by whom she became pregnant. Seven months prior to the birth of the child she left the respondent and went with her paramour to Honolulu where they were immediately married. The petitioner does not appear at any time to have been promiscuous. The circuit judge also considered the evidence that four months after she left the respondent she visited Kauai in an effort to secure the custody of four of the children then in his possession and that upon the respondent's solicitation she promised to shortly return to Kauai and resume her former relations with him. She failed, however, to keep her promise. In view of her subsequent action, no weight can be attributed to this incident except as it may be material to the question of fitness of the respondent to retain the custody of the children subject to these proceedings.

Assuming that the trial judge correctly held that the petitioner was married to the man with whom she came to Hawaii, there was no evidence that at the time she married her second husband her former spouse was still alive. He left Hawaii for the Philippines some fifteen years prior to the time of trial. As to him, since his departure, the record is silent. Nor does it directly appear that at the time petitioner married her second husband, her former marriage was undissolved by divorce. She testified that she herself had not secured a divorce. This evidence, however, does not negative the possibility of her former husband having himself secured a divorce from her.

The *prima facie* validity of a second marriage is not destroyed by a mere showing that a party thereto contracted a previous marriage. The presumption of the continuance of life yields to the presumption of the validity of the second marriage and the innocence of the parties to it. Similarly the *prima facie* validity of the second marriage is not destroyed by the mere showing that one party thereto failed to secure its dissolution by divorce. In

such case it will be presumed that the first marriage has been dissolved by divorce and the burden to show that it has not, rests upon the person seeking to impeach the last marriage. The presumption of the validity of the second marriage is, of course, not absolute. The facts and circumstances justifying an inference of the death of the other party to the first marriage or the dissolution of the former marriage by divorce in favor of the validity of the second marriage are individual to each particular case. Where, as here, there are no facts or circumstances to aid the presumption of the continuance of life or of the continued existence of the former marriage, the presumption of innocence and the validity of the second marriage prevails.

The evidence unquestionably shows a flagrant disregard on the part of petitioner of the law regulating relations between persons of the opposite sex. What her education or early environment was does not appear. Her attitude may be the result of ignorance. But, assuming moral turpitude on her part, in the absence of the evidence showing guilt under facts and circumstances affecting and inconsistent with the proper care and education of her children, it is legally insufficient to sustain the findings and to deprive her of their custody.

Moreover, if we were to judge the respondent by the same standards which the trial judge applied to the conduct of the petitioner, he is equally morally unfit to have the custody of these children. He welcomed the desertion by the petitioner of the man whom she accompanied from the Philippines. The respondent was a party to the relationship as a result of which these children were born. And despite the marriage of the petitioner to her present husband, he solicited her return to him and the continuance of the illicit relations theretofore existing between them.

When the petitioner quit the respondent, she took with her the two youngest children, girls of the ages of eight and four, respectively, and left the three oldest with their father, two girls and a boy, the oldest of whom was a girl, fourteen years of age. Her separation from the three oldest children appears to have been temporary. Shortly thereafter the respondent got possession of the fourth child without the consent of the mother and took her back with him to Kauai. The youngest child is still in the mother's custody. However indifferent the petitioner seems to have been in respect to the law pertaining to marriage, ostensibly she conducted herself as a dutiful and faithful wife. She was known as the respondent's wife and bore his name. She maintained the family home at Kealia where she raised their children and in addition to the ordinary duties of a housewife took in washing. No evidence was offered in criticism of her care of her children. She was apparently a good mother. Their cleanliness and regular attendance at school since their mother's absence indicate her former influence upon their habits and education. It would seem from all of the evidence that as between the petitioner and respondent the best interests of the children demand that they be restored to their mother and that their maintenance, care and education be under her control and direction.

Holding as we do that the children subject to the proceedings should be restored to their mother, the other errors assigned need not be considered.

The decree appealed from is reversed and the cause is remanded with instructions to enter an appropriate order awarding the custody of the children, subject to these proceedings, to the petitioner.

*W. C. Moore* for petitioner.

*P. L. Rice* for respondent.